Will the clerk please call the fourth and the final case of the morning? 1-2-2. Next item will be the appraised. Please put me on the report. Good morning, directors, counsel. My name's Larry Karchmark. May it please the court, I represent the appellant. It's our position that the decision by the commission and the circuit court was against the manifest way of the evidence with respect to prospective medical treatment for Mr. Young. Mr. Young was a 34-year-old individual at the time of this accident. And arbitrator and the commission found that there was a causal connection that was found with respect to his injuries. There was a pre-existing condition that was aggravated by the accident of March 20th, 2010 and January 11th, 2013. The arbitrator also found, the commission also found, that all treatment rendered was reasonable and necessary, which would mean that all treatment that was rendered by Dr. Chang, who was his primary surgeon, was reasonable and necessary. However, what happened is that up to a certain point in time, and Mr. Young was off from March 20th, 2010 through December of 2012, which was two years of treatment, which entailed conservative treatments such as physical therapy and epidural steroid injections, at which time he felt he wasn't getting any better, at which time he recommended surgical intervention. He was then examined by Dr. Lamme on behalf of the respondent, and Dr. Lamme had indicated in his opinion that all he suffered was a temporary aggravation of a pre-existing condition and he should go back to work full duty, which, in fact, Mr. Young attempted to do. And what happened approximately a week after he returned to work? He injured himself again, which leads us to Dr. Cloud Miller's explanation in his opinion saying he wasn't surprised that Mr. Young had injured himself again because of the condition of his back, and specifically said that he's restricted probably to a 25-pound permanent lifting restriction and should undergo pain management to help alleviate his problems. Well, they refused to agree to surgical intervention with respect to Mr. Young based on Dr. Chang's recommendation, and the reason being that it was denied through the commission was that, from what I read, is that the leg pain that developed in Mr. Young's condition with respect to his back did not complain about it until sometime later after the initial injury had taken place. I think it's more complicated than that. According to Chang's progress notes, and I know you're familiar with it, he said that he discussed the need for fusion surgery with the claimant, and the claimant, quote-unquote, elected to avoid the fusion surgery. He chose not to have it, believing at that time that he could get enough relief through conservative measures. And then the issue never again raised at the arbitration hearing. So how is it now that you're coming in and saying the commission erred when it didn't deal with the need for lumbar fusion when the notes from the doctor, the treating physician, clearly indicated the claimant elected not to proceed, and you never raised an issue on arbitration? So how is it even before us now? Well, he elected not to proceed at that particular time. Well, if we don't raise it at arbitration, how can we deal with it here? Well, we must raise it at arbitration to Dr. Lammy's respect because Dr. Lammy and Dr. Zellady had indicated he would have been a perfect candidate for fusion surgery but for his high BMI because he was too heavy at the time. Counsel, you only have to look to page 2 of the arbitrator's report, indicating at the very instant beginning that one of the issues that was up for decision was prospective medical care. It's clearly done on the face of the arbitrator's report. Prospective medical care was an issue before the arbitrator. Yes, it was an issue. But in this particular case, you've got something going on that's very, very interesting. The arbitrator is saying there is a causal connection between the accident and his condition of ill-being but has opinions saying that this operation is unnecessary and the evidence is insufficient to establish that an L5-S1 laminectomy and discectomy surgery is reasonable or necessary. Now, that's not suggesting he doesn't have the condition. They're suggesting, I think, in their opinion, that he may very well have the condition, but it's not reasonable and it's not necessary to do this operation. Well, there's two operations we're talking about. The decompression surgery that Dr. Chang recommended, eventually he thought Mr. Young did not get better, and then we go on to the fusion surgery that not only Dr. Chang had recommended previously, but Dr. Soleil, he said he would have been a perfect candidate because it's not so much of his leg pain that he was having, which was denied, but also the mechanical back pain, which a fusion surgery would hopefully alleviate and get him back in the workforce. We have a 34-year-old individual. And what Dr. Lamby is saying is that he basically said, go back to work, you've just got a temporary aggravation, there's nothing wrong with you. He goes back to work, sees that he gets hurt again, which was obvious by Dr. Miller, who examined him on behalf of the respondent, and who said he wasn't surprised that he hurt himself again because of the nature of his condition of his back. What are we supposed to do with this individual when the doctor says he's gotten no better for two years of treatment, he needs some type of surgery to alleviate some of this problem, and they're denying the surgery, but two other doctors say, hey, this guy has got a problem that can be rectified by fusion surgery and or decompression surgery. It wasn't just Dr. Lamby that was of the opinion. Didn't Millers and Salehi also not recommend the laminectomy and the disectomy? Weren't they consistent with Lamby? No. Well, Dr. Miller had indicated that because he believed that's true, that nothing was going to help the guy. We still have a 25-pound permanent lifting restriction, and he also agreed, he also recommended that pain management help him, which goes to the issue of MMI. Now, what about Dr. Salehi? Dr. Salehi did not say that. Dr. Salehi said that decompression surgery is the first step, and then that would be the first step in this person's condition, and if that did not work, then fusion surgery would be the next step because of his mechanical back pain. What he said is that before his BMI, and I think that was discussed in counsel's reply brief, Dr. Salehi did not indicate that surgery was not needed for this individual. He indicated that surgery wasn't appropriate because of the weight of this individual and the risks involved in fusion surgery. So the bottom line is Salehi didn't recommend those things, did he, those surgeries, did he? Dr. Salehi did recommend fusion surgery. In fact, he quotes in his evidence testimony that, but for his BMI, he would be a perfect candidate for fusion surgery because of his mechanical back pain. And my point is, is that if that is the case, we still have a 36-year-old individual who, for all practical purposes, is being told there's nothing else we can do for you, forget about surgery, we're going to deny that, you're going to go out with a 25-pound lifting restriction, go through pain management for the rest of your life, you're going to have to live with it, we're sorry, we're not going to determine that surgery is adequate for you. So at what point did the claimant decide he wanted surgery? Well, that's the issue because by the time we got to the arbitration hearing, that was the issue to be determined, whether surgery was beneficial for this guy, because of the length of time that he went through prolonged treatment, and nothing was helping. But he didn't, oh, you're ignoring the fact, unless I missed something, he told Chang he didn't want the surgery, didn't he? At that time, there was one point in time that he did mention it. But what I'm saying is that surgery seems to always be the last resort when we talk about injuries like that. Well, that was the fusion surgery that he said he didn't want to do. That's correct. But you're appealing the denial of prospective medical care in the form of the laminectomy. Well, both. But Salih said first thing you do is the decompression surgery, and then if that doesn't work, you go to the fusion. Correct. But you're not only here on appeal saying that there was error in not allowing the fusion surgery. You're here saying it was error to deny the laminectomy. That's correct. Simply because we have to understand that the fusion surgery or the laminectomy that was denied, there was no addressing by the arbitrator about the fusion surgery. That was brought up with respect to Dr. Salih and Mr. Young. The only thing the arbitrator denied was the laminectomy and disectomy, and that's what was approved and adopted by the commission. But there's an interesting passage in the arbitrator's decision that says, Petitioner failed to prove that the L5S1 laminectomy and disectomy recommended reasonable medical care necessary to relieve the effects of his work injury. Then it goes on to say, Miller, Lamey, and Salih all indicated that the petitioner suffers from degenerative disc disease and that a laminectomy and disectomy surgery would not be beneficial. And so if it's not beneficial, it's not reasonable necessary either. Well, first of all, Dr. Salih did not, that's not what Dr. Salih said in his testimony. He indicated that the laminectomy would be the first approach and it would be easier to do the laminectomy even though he's overweight because the risks aren't as great with the laminectomy as it would a fusion surgery. And I agree, Dr. Lamey and Dr. Miller had indicated that surgery would not be necessary or not beneficial, but the point of the matter is surgery usually is the last episode in order for someone to get better and be treated to get rid of this relenting back pain that this individual was having because of a degenerative condition and because it was aggravated by these particular accidents. Would you agree that ultimately our decision has to be based on the manifest weight of the evidence standard? So now you testably or expressly acknowledge that both Lamey and Miller testified it was not necessary. You said Salih has testified in a manner different than what the arbitrator concluded, but if you've got Lamey and Miller lining up against the claimant, how is the decision against the manifest weight? Because if we look at Lamey's opinion, it's just not correct. Look at Dr. Lamey's opinion when he says this man just suffered a temporary aggravation of a preexisting condition. Go back to work full duty. To avoid losing his income, he went back to work full duty, even though it was against his treating doctor's recommendation. He goes back to work. In a matter of a week or so, he gets hurt again, which Dr. Miller testifies he wasn't surprised because of the nature of his condition. Then when Dr. Lamey examines him again for a second IME, he says, well, yeah, he still doesn't need it, and if he has a problem working, if it's too taxing for him, go find another job. Well, is that someone that really can care for an individual where there is a possibility that he can get better with a type of procedure after all other treatment has failed and he's 38 years old? There's got to be something in order to put this guy back in the workforce and not limit his ability where he may be found with a disability or else. Well, it may seem like an unusual opinion to you, but do we substitute our judgment for that of the commission on their assessment of Lamey's testimony? That's what you're asking us to do, right? Well, I'm asking you to assess your – I'm asking you to form your opinion based on the credibility of Dr. Lamey's. Well, we don't judge credibility, do we? Well, Dr. – but if you look at Dr. Lamey's report in total, and you take into consideration the claimant's young age, you take into consideration the length of treatment that he underwent without him getting any better, you take into consideration the need for some type of treatment as opposed to just telling him to go out and find a job somewhere that's less than – that's 25 pounds or less and possibly continue the pain management because of the nature of your back problem. And this is what he has to do as a 39-year-old individual and find himself back on the – it just doesn't seem credible with respect to the weight that's given to – by Dr. Salehi and made by Dr. Chang. It's not as if he was treated for two weeks or two months and says, you know, you need a laminectomy and infusion. This was prolonged treatment, which he even – which Dr. – which Mr. Young even felt he didn't want him to go unless it was absolutely necessary. Well, he never got any better. He couldn't do his job. He got injured again, and it was necessary at that time. So we have to look at Dr. – Dr. Salehi's opinion with respect to the need for surgery based on the fact that he is not going to be able to function and there may not even be a job. If we look at the circumstances in the entire case for this individual, then you're going to find a young man who's going to be on the disability rolls, and he's going to be supported by the state if he's not going to get some type of help or he's going to be on pain management for the rest of his life. Counsel, your time is up. You'll have time in the clock. Thank you. Thank you. May it please the Court. Counsel, my name is John Wheeler. I'm attorney for Southwest Airlines. In this matter, the issue in this case is prospective medical care, namely surgical intervention. With respect to surgical intervention, the proper standard here is a manifest way to the evidence. The standard is that there's sufficient factual evidence in the record to support the commission's decision. You asked a question. We've been going back and forth with the claimants' counsel. What is your interpretation of Salehi's testimony? Did Salehi recommend laminectomy and discectomy? Did he recommend those? It's my opinion that's not accurate. In fact, if you look at Dr. Salehi's reports dated December 26, 2012, under Impressions and Recommendations, the second paragraph he says, and I quote, certainly a decompressive procedure via laminectomy and discectomy, as has been mentioned in the medical note, is not going to help the mechanical back pain which would require a fusion. Would not help him. I'm quoting directly from Dr. Salehi's opinion. Well, that's consistent with laminectomy and discectomy. All three of them do not believe it would help him. That's correct. That is my opinion. Okay. Again, a reviewed court should review a commission's decision as long as the record contains a sufficient legal basis, regardless of the specific findings. Conversely, a finding would be against the manifest way of the evidence if the opposite conclusion is readily apparent. In this case, the commission's decision with respect to prospective medical care, namely surgical intervention, is fully supported by the record, specifically the opinions of Dr. Lamey, Dr. Miller, and Dr. Salehi. The commission properly relied on the opinion of Dr. Lamey in rendering their opinion with respect to prospective care. Dr. Lamey examined the petitioner at the request of the defendant and determined that the petitioner suffers from degenerative disc disease. Dr. Lamey noted that the petitioner's MRI results did not show the results of any workplace injury. Regarding prospective care, Dr. Lamey specifically noted that he cannot support any surgical intervention, regardless whether it be a laminectomy, discectomy, or a fusion. The commission reasonably relied on Dr. Lamey's report in rendering their decision. Dr. Lamey's opinions were determined to be credible by the commission and provide a sufficient basis to support their decision. The commission also reasonably relied on the opinion of Dr. Miller in rendering their decision. Dr. Miller opined surgery at the L5 S1 level would not improve the petitioner's medical condition. It would be unlikely to yield a significant improvement. Dr. Miller further elaborated that there was no medical treatment that would return the petitioner to a full recovery. This included a potential fusion surgery. Dr. Miller's opinion was determined to be credible by the commission and provided a reasonable basis to support the commission's decision. The commission also relied on Dr. Salehi's report in rendering their decision. Dr. Salehi opined that he does not see a need for further treatment beyond an FCE to determine permanent restrictions. As I just alluded to, his report specifically mentions that he does not believe that a laminectomy and discectomy would be beneficial given the petitioner's condition. Dr. Salehi further elaborated that following the FCE, the petition would be placed at maximum medical improvement. The commission found the opinion of Dr. Salehi to be credible and provides additional support for their decision. Therefore, the opinions of Dr. Miller, Dr. Salehi, and Dr. Lamine with respect to prospective surgical care were found to be credible. The commission reasonably relied on these multiple pieces of evidence in rendering their decision. Given the totality of the record available, the opposite conclusion is certainly not readily apparent. Therefore, the decision of the commission as it relates to prospective medical care is not against the manifest weight of the evidence. As the decision is not against the manifest weight of the evidence with respect to prospective medical care, in accordance with that decision, prospective TTD benefits should not be awarded. Therefore, in conclusion, the decision of the Illinois Workers' Compensation Commission with respect to prospective medical care as well as benefits should be affirmed. Thank you, counsel. Counsel may reply. With respect to Dr. Salehi's opinion, Dr. Salehi said that a decompression surgery is difficult. The difference we have to understand is Dr. Salehi said that the decompression surgery would not help his mechanical back pain. The mechanical back pain is helped by effusion surgery. The decompression surgery is used for purposes of relieving a person's leg pain where there's compression of myotis. Those are two different type of procedures for two different reasons. That's what Dr. Salehi said with respect to the decompression surgery. If he said he wanted to – if he did undergo the decompression surgery, that would be done first. Then – and there would be nothing wrong with that. If his testimony specifically said that and clarified what it was in his report, which was the purpose why he testified to that, the mechanical back pain would be the one that would relieve his back pain that he's having, according to Dr. Salehi, by way of effusion. One thing I didn't mention in my argument was the maintenance issue. The award was – the arbitrator did award vocational rehabilitation and an FCE. It's our opinion that vocational rehabilitation is derivative – maintenance is derivative of vocational rehabilitation. That was one of the issues with respect to our review. We did not review that issue. So we believe that maintenance should be awarded from the time that, according to the arbitrator, if you find that TTD was not warranted in this particular case, that maintenance should at least be awarded until such time that a vocational rehabilitation plan is performed or an FCE is performed, then a vocational rehabilitation plan is implemented, which would be consistent with the arbitrator's and commissioner's decision, which was not reviewed at the time of review. And for those reasons, we believe that taking everything into consideration, the young man's age, the nature of his condition, the fact that he does have the possibility to get better with respect to surgery, that the denial of his surgery was certainly against the manifest way that the evidence was taken as a whole, and that maintenance, again, should be awarded based on the commissioner's decision, which was not reviewed at the time of the report. Thank you very much. Thank you, counsel, both for your arguments in this matter and for taking our advisement. The witness position shall issue.